UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTIAN STEARNS, individually and on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br><br>           -against-<br><br>NATIONAL GRID PLC, NATIONAL GRID ELECTRIC SERVICES LLC, USIC LLC, and RECONN HOLDINGS LLC,<br><br>                     Defendants. | Case No. 1:23-cv-276 (GTS/CFH)<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Christian Stearns, individually and on behalf of all others similarly situated, by and through his undersigned attorneys, allege upon information and belief as follows:

## NATURE OF ACTION

1.      Defendants National Grid PLC, National Grid Electric Services LLC ("National Grid Electric"), USIC LLC ("USIC"), and RECONN Holdings LLC ("RECONN") are businesses that provide various utility services at construction sites.

2.      Defendants entered contracts with the State of New York and various municipalities throughout the State of New York to provide utility services for publicly funded construction projects. Accordingly, employees that perform work on these projects are entitled to be paid at state prevailing wage rates under Article 8 of the New York Labor Law (N.Y. Lab. Law § 220 *et. seq.*, hereinafter "Article 8").

3.      Plaintiff is a former employee of Defendants who was employed as a "Damage Prevention Adviser." His duties involved safety compliance, mapping, and monitoring of underground utility lines at construction sites. Based on the work that he performed, under Article 8, Plaintiff's job title and description would that of an "Operating Engineer – Survey Crew – Consulting Engineer – Instrument Person" (hereinafter "Instrument Person / People")

or, in some instances, "Operating Engineer – Survey Crew – Consulting Engineer – Rod Person" (hereinafter "Rod Person / People").

4.      Plaintiff brings this action on behalf of himself and other similarly situated individuals employed as Instrument People or Rod People by Defendants in New York.

5.      Plaintiff contends that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, by knowingly requiring, suffering, or permitting him and other members of the putative FLSA Collective ("Collective Members") to work more than 40 hours per week without properly paying them overtime wages.

6.      Plaintiff also brings this action on behalf of himself and all similarly situated Instrument People and Rod People employed by Defendants in New York as a class action under Federal Rule of Civil Procedure 23 to remedy the following violations of the New York Labor Law ("NYLL"):

a.   Failure to provide wage notices and wage statements as required by the New York Wage Theft Prevention Act, NYLL § 195, and supporting regulations

b.   Failure to pay prevailing wages, daily overtime, holiday premiums, and supplemental benefits that they were entitled to receive for work that they performed under contracts between Defendants and New York State and/or municipalities

c.   Failure to pay "spread of hours" premiums

## JURISDICTION AND VENUE

7.      This court has subject matter jurisdiction over this matter under 29 U.S.C. § 216(b) (FLSA actions "may be maintained against any employer … in any Federal or State court of competent jurisdiction"), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…"). The court has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

8.      The claims under New York law are so closely related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

10.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### I.     Defendants

**National Grid PLC**

11.     At all relevant times, Defendant National Grid PLC has been and continues to be an employer engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

12.     Upon information and belief, Defendant National Grid PLC is, and at all relevant times was, a utility services company that provided utility services, including contracting with the State of New York and/or municipalities in the State of New York to provide utility services.

13.     Upon information and belief, at all relevant times, Defendant National Grid PLC had gross revenues in excess of $500,000.00.

14.     Upon information and belief, Defendant National Grid PLC is a United Kingdom corporation with its headquarters and principal place of business in London.

15.     At all relevant times, Defendant National Grid PLC has been and continues to be an employer under NYLL § 190.

16.     At all relevant times, Defendant National Grid employed or continued to employ Plaintiff and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL.

**National Grid Electric Services LLC**

17.    At all relevant times, Defendant National Grid Electric has been and continues to be an employer engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

18.    Upon information and belief, Defendant National Grid Electric is, and at all relevant times was, a utility services company that provided utility services, including contracting with the State of New York and/or municipalities in the State of New York to provide utility services.

19.    Upon information and belief, at all relevant times, Defendant National Grid had gross revenues in excess of $500,000.00.

20.    Upon information and belief, Defendant National Grid Electric is a New York corporation with its headquarters and principal place of business in Albany, New York.

21.    National Grid Electric is a subsidiary of National Grid PLC.

22.    At all relevant times, Defendant National Grid has been and continues to be an employer under NYLL § 190.

23.    At all relevant times, Defendant National Grid employed or continued to employ Plaintiff and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL.

**USIC LLC**

24.    At all relevant times, Defendant USIC has been and continues to be an employer engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

25.    Upon information and belief, Defendant USIC is, and at all relevant times was, a utility services company that provided utility services, including contracting with the State of New York and/or municipalities in the State of New York to provide utility services.

26.    Upon information and belief, at all relevant times, Defendant USIC had gross revenues in excess of $500,000.00.

27.    Upon information and belief, Defendant USIC is an Indiana corporation with its headquarters and principal place of business in Indianapolis, Indiana.

28.    At all relevant times, Defendant USIC has been and continues to be an employer under NYLL § 190.

29.    At all relevant times, Defendant USIC employed or continued to employ Plaintiff and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL.

30.    Upon information and belief, Defendant USIC is, and was at all relevant times, responsible for controlling the operations of Defendant RECONN, including setting RECONN's payroll and scheduling policies (including the unlawful practices complained of here), and is otherwise in charge of running the day-to-day operations of the business of RECONN.

**RECONN**

31.    At all relevant times, Defendant RECONN has been and continues to be an employer engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

32.    Upon information and belief, Defendant RECONN is, and at all relevant times was, a utility services company that provided utility services, including contracting with the State of New York and/or municipalities in the State of New York to provide utility services.

33.    Upon information and belief, at all relevant times, Defendant RECONN had gross revenues in excess of $500,000.00.

34.    Upon information and belief, Defendant RECONN is an Indiana corporation with its headquarters and principal place of business in Indianapolis, Indiana.

35.    Upon information and belief, Defendant RECONN is a subsidiary of USIC.

36.     At all relevant times, Defendant RECONN has been and continues to be an employer under NYLL § 190.

37.     At all relevant times, Defendant RECONN employed or continued to employ Plaintiff and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL.

## II.     Plaintiff

38.     Individual and Representative Plaintiff Christian Stearns is an adult individual residing in Amsterdam, New York, and is a citizen of the state of New York. He was employed by Defendants as an Instrument Person and Rod Person from August 20, 2021, until September 13, 2022.

## COLLECTIVE ACTION ALLEGATIONS

39.     Plaintiff brings his first cause of action as a collective action for himself and all others similarly situated to recover unpaid overtime wages, liquidated damages, and other damages related to Defendants' violation of the FLSA.

40.     Plaintiff pursues the requested relief on behalf of the following collective:

> All persons employed by Defendants in New York as Instrument People or Rod People at any time from three years before the filing of this Complaint through the entry of judgment in this case (the "Collective Action Period") who worked over 40 hours in any work week (the "Collective Members").

41.     A collective action is appropriate because Plaintiff and the Collective Members are similarly situated, in that they were all subjected to Defendants' illegal policies, including its policy of failing to pay overtime premiums at the proper rate for work performed in excess of 40 hours each week. As a result of this policy, Plaintiff and the Collective Members did not receive the legally required overtime premium payments for all hours worked in excess of 40 hours per week.

42.  Plaintiff and the Collective Members have substantially similar, if not identical, job duties and are or were paid based on a similar, if not identical, payment structure.

43.  Specifically, even though Plaintiff did not satisfy any test for exemption, Defendants engaged in a common scheme requiring, suffering, or permitting Plaintiff and the Collective Members to work overtime and failed to pay them appropriate overtime premiums.

44.  Plaintiff and the Collective Members were hired by Defendants and assigned to work as Instrument People and Rod People on publicly funded construction projects.

45.  Defendants required Plaintiff and the Collective Members to follow their policies, practices, and directives. Defendants retained the right to terminate Instrument People and Rod People's employment at any time. Defendants could terminate an Instrument Person or Rod Person, for example, if they behaved in a way that Defendants believed was inappropriate or had violated one of Defendants' rules or standards.

46.  Defendants controlled the work schedules that Plaintiff and the Collective Members worked.

47.  Plaintiff and Collective Members were all hourly paid employees.

48.  Defendants set the rates and method of pay applicable to Plaintiff and the Collective Members.

49.  Defendants required, suffered, or permitted Plaintiff and the Collective Members to work over forty hours per week without proper overtime pay.

50.  Defendants did not pay Plaintiff and the Collective Members an overtime premium of 1½ times their legally required hourly rate for all time worked in excess of 40 hours per week.

51.  Defendants maintained common timekeeping systems and policies with respect to the Plaintiff and the Collective Members.

52.  Plaintiff estimates that the Collective, including both current and former employees over the relevant period, will include at least 40 members. The precise number of Collective Members should be readily available from Defendants' records, including personnel, scheduling,

and time records, and from input received from the Collective Members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the Collective, its members may be informed of the pendency of this action directly by U.S. mail, electronic mail, or other electronic means.

53.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

## CLASS ACTION ALLEGATIONS

54.     Under the New York Labor Law and the New York common law, Plaintiff brings his Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at any time six years before the filing of this Complaint through the entry of judgment in this case (the "Class Period") who worked for Defendants in New York as Instrument People or Rod People (the "Class Members").

55.     The number and identity of the Class Members can be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

56.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief, there are at least 40 Class Members.

57.     Common questions of law and fact exist as to all Class Members, and such questions predominate over any questions solely affecting individual Class Members.

58.     Common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.   whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL

b.   whether Defendants violated the NYLL by failing to pay Plaintiff and the Class Members "spread of hours" premiums on days that Plaintiff or the Class Members worked over 10 hours in a day

c.   whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiff and the Class Members, who were third-party beneficiaries of such contracts, at New York State prevailing wage rates

d.   whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiff and the Class Members overtime hours at the prevailing wage overtime rates for all hours worked in excess of 40 hours per workweek or eight hours per day on prevailing wage projects

e.   whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiff and the Class Members supplemental benefits, holiday pay, and/or other paid leave on prevailing wage jobs as required by the New York State prevailing wage schedules

f.   whether Defendants were unjustly enriched by failing to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs

g.   whether Defendants failed to provide Plaintiff and Class Members with proper wage notices and wage statements

h.   whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

i.   the nature and extent of classwide injury and the measure of damages for those injuries.

59.   Plaintiff's claims are typical of the Class Members' claims.

60.   Plaintiff, like all Class Members, worked for Defendants in New York as an Instrument Person and Rod Person, and his work was performed in accordance with Defendants' corporate policies. Plaintiff, like all Class Members, was not paid prevailing wages, supplemental benefits, holiday pay, or daily/weekly overtime prevailing wages for work performed under contracts with the local and/or state governmental entities and was not provided with proper

wage notice and wage statements. If Defendants are liable to Plaintiff for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

61.     Plaintiff and his counsel will fairly and adequately represent the class.

62.     There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

63.     Plaintiff's counsel are experienced class action litigators who are well prepared to represent the interests of the Class Members.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

65.     Plaintiff and Class Members lack the financial resources to vigorously prosecute a lawsuit in federal court against the Defendants. Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTUAL ALLEGATIONS

### I.      The Construction Contracts

66.     At all relevant times, Defendants have been utility service businesses, including hiring and managing individuals to work on construction projects.

67.     Upon information and belief, Defendants entered into contracts with the State of New York and various municipalities, as either prime contractors or subcontractors, to furnish labor, material, and equipment to provide utilities services, including safety compliance, mapping, and monitoring of underground utility lines at construction sites (the "Construction Contracts").

68.     Upon information and belief, USIC and RECONN were subcontractors for National Grid PLC and/or National Grid Electric and, in relation to the Construction Contracts, were directed and controlled by National Grid PLC and/or National Grid Electric.

69.     Under Article 8 of the New York Labor Law, as a matter of fact or by operation of law, the Construction Contracts obligated Defendants to pay Plaintiff and all other similarly situated employees at or above the applicable local prevailing wage rates, including any required supplemental benefits and overtime and holiday premiums.

70.     New York Labor Law § 220 provides that the wages to be paid to workers on public works projects shall be not less than "the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with which such labor is performed in its final or completed form is to be situated, erected or used."

71.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to Plaintiff and all other similarly situated employees should have been annexed to and formed a part of the Construction Contracts. If not annexed to the Construction Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and public policy.

72.     The Construction Contracts also provided, as a matter of fact or by operation of law, that any subcontracts that any contractor entered into contain language requiring the payment of prevailing wages and supplements to all workers furnishing labor at the publicly funded construction sites.

73.    The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Construction Contracts was made for the benefit of all workers furnishing labor for one or more public agencies, and those workers are the beneficiaries of that promise and the contracts entered into between Defendants and government agencies.

74.    As an employee of Defendants who were assigned to work on Defendants' publicly financed projects, Plaintiff was intended third-party beneficiaries of the Construction Contracts.

## II.    Plaintiff's Work for Defendants

75.    All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

76.    In accordance with the Construction Contracts, Defendants hired Plaintiff and the Collective Action Members and Class Members to perform utility services at various publicly funded construction projects throughout the State of New York.

77.    Defendants were responsible for setting Plaintiff's schedules, directing and supervising the manner of his work, and determining how he would be paid.

78.    Defendants were responsible for hiring and firing Plaintiff and other employees, setting rates and methods of pay, setting schedules, and maintaining employment records.

79.    Plaintiff was recruited and trained by USIC.

80.    Plaintiff's paychecks were issued by RECONN, which, upon information and belief, is a subsidiary of USIC.

81.    Plaintiff's day-to-day work was supervised by employees of RECONN, USIC, National Grid Electric, and National Grid PLC.

82.    Plaintiff's duties included using instruments to map underground gas and electric utilities at construction sites to provide information and direction to construction crews who were excavating at those sites. At times, Plaintiff would also assist other utility personnel, "Locators," who used more advanced, sonar-based equipment (which Plaintiff did not use) to create or rectify

maps of underground utilities. Plaintiff would also oversee ongoing construction to ensure that any digging was done safely and in accordance with his or the Locators' maps and recommendations.

83.    Plaintiff worked for Defendants on various construction projects throughout the State of New York, mainly in Albany and the surrounding municipalities. Though some were private construction projects, about half of the projects that Plaintiff worked on were publicly funded and included, for example, highways, on- and offramps, public roads, municipal waterlines, and traffic lights.

84.    Although it was clear that Plaintiff would be working for a contractor that was contracted to provide work for state and local governmental entities, Defendants did not provide notice that Plaintiff was entitled to prevailing wages or supplemental benefits.

85.    There were no notices in the workplace of the right to receive prevailing wages, or any other notices concerning workplace rights, such as required notices under the New York Labor Law and the Fair Labor Standards Act.

86.    Throughout his employment with Defendants, Plaintiff was not paid the required prevailing wage rates in effect at the time for work performed under the Construction Contracts. He did not receive prevailing wage overtime or holiday pay. He also did not receive the required supplemental benefits or their monetary equivalent.

87.    Defendants' failure to pay Plaintiff proper prevailing wage rates, supplemental benefits, and overtime and holiday premiums calculated based on prevailing wage rates were corporate policies that applied to all Instrument People and Rod People employed by Defendants.

88.    Upon information and belief, Defendants willfully failed to pay Plaintiff the prevailing wage rates and supplements to which he was entitled.

89.    Upon information and belief, Defendants willfully failed to pay Plaintiff and the Collective Members overtime pay at 1 ½ times the lawful prevailing wage rate to which they were entitled, in violation of the FLSA.

90.     Defendants did not provide Plaintiff or any Instrument People or Rod People with proper wage notices – containing the dates of work covered by their wage payments; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the complete and total number of hours worked, including overtime hours worked if applicable; deductions; and net wages – at the time of hire, annually by February 1 of each year, or when their wage rate(s) changed.

91.     As a result, Plaintiff was not sure what his hourly rate of pay would be; whether he would receive overtime pay, and if so, what his overtime rate would be.

92.     Defendants did not provide Plaintiff or any other Instrument People or Rod People with proper wage statements with their wage payments. As a result, Plaintiff was not sure what his rate of pay was, or whether he had been paid for all hours worked.

93.     In the summer, Plaintiff normally worked five days per week, Monday through Friday, from 6:00 a.m. until 5:00 p.m. In the winter, Plaintiff normally worked five days per week, Monday through Friday, from 7:30 a.m. until 4:00 p.m. Every day, Plaintiff would clock out to take a lunch break which would last, at most, 30 minutes.

94.     As a result, Plaintiff almost always worked over 40 hours per week. For example, during the week of June 20, 2022, Plaintiff worked 52.5 hours.

95.     Plaintiff often worked over eight hours in a day.

96.     From August 20, 2021, until on or about March 1, 2022, Plaintiff was paid $15.50 per hour for his work performed for Defendants at publicly funded construction sites. From March 1, 2022, until September 13, 2022, Plaintiff was paid $17.00 per hour for his work performed for Defendants at publicly funded construction sites.

97.     When Plaintiff received overtime pay for working over 40 hours in a week, it was based on the base rate of $15.50 or $17.00 per hour rather than the applicable prevailing wage rate

in effect at the time. Plaintiff did not receive overtime pay for working over eight hours in a day or on a holiday.

98.    At all relevant times, Defendants failed to pay Plaintiff spread of hours premiums for days that Plaintiff worked over 10 hours in a day.

## FIRST CAUSE OF ACTION:
### Fair Labor Standards Act – Unpaid Overtime

99.    Plaintiff, on behalf of himself and the FLSA Collective Members, incorporates the allegations above.

100.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et. seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

101.    Defendants have failed to pay Plaintiff and the FLSA Collective 1 ½ times their regular rate of pay for all hours they worked in excess of 40 hours in a work week.

102.    As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. §§ 201 *et seq.*

103.    Defendants' unlawful conduct, as described in this complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this complaint were unlawful. Defendants have not made any good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Members.

104.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, under 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION:
### Breach of Contract

105.   Plaintiff, on behalf of himself and the Class Members, incorporates the allegations above.

106.   Upon information and belief, the Construction Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiff and the employees performing work under such contracts.

107.   The prevailing rate schedules require that employees working over eight hours in one day be paid overtime.

108.   Those prevailing rates of wages and supplemental benefits were made part of the Construction Contracts for the benefit of the Plaintiff and the other employees performing work under such contracts.

109.   If the contracts or agreements failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were implied as a matter of law, requiring Defendants to pay Plaintiff and the Class Members prevailing wages, daily/weekly overtime, and supplemental benefits for all work performed.

110.   Defendants' failure to pay Plaintiff and the Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed under the Construction Contracts constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

111.   As a result of Defendants' failure to pay Plaintiff and the Class Members at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

## THIRD CAUSE OF ACTION:
### Unjust Enrichment & Quantum Meruit
### (Pleaded in the Alternative)

112.   Plaintiff, on behalf of himself and the Class Members, incorporates the allegations above.

113.   Based on Defendants' failure to pay Plaintiff and the Class Members the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff and the Class Members.

114.   Equity and good conscience require that Defendants pay restitution to Plaintiff and the Class Members.

115.   Upon information and belief, when Defendants entered into the Construction Contracts, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work under the Construction Contracts.

116.   Plaintiff and the Class Members provided valuable services to Defendants performing prevailing wage jobs for which Plaintiff and the Class Members expected compensation.

117.   Defendants knowingly accepted such services yet failed to pay Plaintiff and the Class Members the reasonable value of such services as defined by the New York State prevailing wage schedules.

118.   As a result of Defendants' failure to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff and the Class Members are entitled to relief from Defendants under New York's common law of unjust enrichment.

119.   As a result of Defendants' failure to pay Plaintiff and the Class Members the reasonable value of the valuable services they rendered, Plaintiff and the Class Members are entitled to relief from Defendant under New York's common law of quantum meruit.

**FOURTH CAUSE OF ACTION:**
**New York Labor Law – Wage Notice Violations**

120.   Plaintiff, on behalf of himself and the Class Members, incorporates the allegations above.

121.   At all relevant times, Defendants employed and/or continue to employ Plaintiff and each Class Member within the meaning of the New York Labor Law, §§ 2 and 651.

122.   Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by NYLL Article 6, §195, on the date of hire and on the date of any wage increases, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and the Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, §191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

123.   Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants $50.00 per employee for each workday that the violations occurred or continue to occur, up to a total of $5,000 per employee, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

## FIFTH CAUSE OF ACTION:
### New York Labor Law – Wage Statement Violations

124.   Plaintiff, on behalf of himself and the Class Members, incorporates the allegations above.

125.   Defendants have willfully failed to supply Plaintiff and the Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing, among other things, Plaintiff's straight time rate of pay, overtime rate or rates of pay if applicable, deductions from pay, and an accurate count of the number of hours worked, including overtime hours worked if applicable.

126.   Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant $250.00 per employee for each work day that the violations occurred, up to a total of $5,000 per employee, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, § 198(1-d).

## SIXTH CAUSE OF ACTION:
### New York Labor Law – Spread of Hours Violations

127.   Plaintiff, on behalf of himself and the Class Members, incorporates the allegations above.

128.   At all relevant times, Plaintiff and the Class Members were employees, and the Defendant has been their employer within the meaning of the NYLL.

129.   Defendants willfully violated the rights of Plaintiff and the Class Members by failing to pay them the proper spread of hours premiums required by the NYLL.

130.   As a result of Defendant's unlawful conduct, Plaintiff and the Class Members are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Collective Members and Class

Members, respectfully requests that this Court grant the following relief:

   a.   Designation of this action as a collective action on behalf of the Collective Members and ordering the prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Members

   b.   Certification of this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants′ violation of the common law and New York State law

   c.   An order tolling the statute of limitations

   d.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and New York common law

   e.   An injunction against Defendants and their officers, agents, successors, employees, representatives, and any persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein

   f.   An award of compensatory damages as a result of Defendants' willful failure to pay overtime compensation under the FLSA and supporting regulations

   g.   An award of liquidated damages as a result of Defendants' willful failure to pay overtime compensation under the FLSA and supporting regulations

   h.   $50.00 per Plaintiff and each Class Member for each workday that the violations of the wage notice provision of the NYLL, Article 6 § 195, occurred or continue to occur, up to a total of $5,000 per Plaintiff and each of the NYLL Class Members, as provided for by NYLL, Article 6 § 198(1-b)

   i.   $250.00 per Plaintiff and each Class Member for each workday that the violations of the wage statement provision of the NYLL, Article 6 § 195, occurred or continue to

occur, up to a total of $5,000.00 per Plaintiff and each Class Member, as provided for by NYLL, Article 6 § 198(1-d)

j.      An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class

k.      An award of prejudgment and postjudgment interest

l.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the Complaint.

Dated:   February 28, 2023
         New York, New York

Christopher Q. Davis
The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, New York 10004
646-430-7930
cdavis@workingsolutionsnyc.com

Nicholas Bittner (*pro hac vice* motion forthcoming)
The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, New York 10004
646-430-7930
nbittner@workingsolutionsnyc.com
*Attorneys for Plaintiffs*