**VIA ECF**

September 29, 2023

Hon. Glenn T. Suddaby
United States District Judge
Northern District of New York
Federal Building and U.S. Courthouse
P.O. Box 7367
Syracuse, NY 13261-7367

> Re: *Christian Stearns v. National Grid Electric Services LLC, et al; 1:23-cv-00276-GTS-CFH*

Dear Judge Suddaby:

This joint letter is submitted by Plaintiff Christian Stearns ("Plaintiff" or "Mr. Stearns") and Defendants National Grid Electric Services LLC ("National Grid Electric"), USIC LLC ("USIC"), and RECONN Holdings LLC ("RECONN") (collectively, "Defendants"), requesting that the Court approve the Settlement Agreement reached between the parties, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Settlement Agreement is appended hereto as **Exhibit 1**.

## I. The Proposed Settlement Agreement

This action involves collective and class claims brought for breach of contract, and violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL) by Individual and Representative Plaintiff Christian Stearns. Although the action was commenced as a collective action with respect to the FLSA claims and a putative class action with respect to the breach of contract and NYLL claims, the parties reached the proposed settlement prior to the matter being conditionally certified as a collective action or certified as a class action. There are also no opt-ins to this action.

Mr. Stearns is an alleged former Instrument Person and Rod Person who he alleges, from August 20, 2021, through September 13, 2022, worked for Defendants. Specifically, Plaintiff was recruited and trained by USIC, his paychecks were issued by RECONN, which, upon information and belief, is a subsidiary of USIC, and his day-to-day work was allegedly supervised by employees of RECONN, USIC, and National Grid Electric. His alleged job duties generally

consisted of using instruments to map underground gas and electric utilities at construction sites to provide information and direction to construction crews who were excavating at those sites.

Plaintiff alleges that Defendants entered into contracts with the State of New York and various municipalities, as either prime contractors or subcontractors, to furnish labor at construction sites (the "Construction Contracts") and were obligated pursuant to those contracts to pay Plaintiff and other similarly situated employees prevailing wages for work performed at those sites. Plaintiff further alleges that Defendant failed to pay Plaintiff at the applicable prevailing wage rate for regular and overtime hours in violation of the Construction contracts and the FLSA. Plaintiff also alleges violations of the NYLL through the failure to provide proper Wage Notices and Statements and failure to pay spread of hours premiums.

Defendants vigorously deny each and every allegation made by Plaintiff. They fervently contend that Plaintiff was not an employee of National Grid, was not entitled to prevailing wages, and received all legally required notices, statements, and wages.

After negotiations over a period of several months and discussions regarding Plaintiff's claims and Defendants' defenses, Plaintiff's review of his pay records and other requested documents, the Parties arrived at a resolution where Defendants will pay a total of **$20,000.00**, inclusive of attorneys' fees and costs to Plaintiff and his counsel in exchange for mutual releases and promises contained in the Settlement Agreement. For the reasons outlined below, the Parties believe that the terms and conditions of the Settlement Agreement are fair, reasonable, and in their mutual best interests. The Parties, therefore, request that the Court approve the settlement as a fair and reasonable compromise of the Parties' dispute.

##  II.     The Court Should Find the Settlement Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 1:14-cv-00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016).

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The following factors have been held to be relevant to an assessment of fairness of an FLSA settlement: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Cohetero v. Stone & Tile, Inc.*, 16-CV-4420, 2018 WL 565717, at *2–3 (E.D.N.Y. Jan. 25, 2018) (applying the aforementioned factors discussed in *Wolinsky*).

A. *Plaintiff's Range of Possible Recovery*

The first factor weighs in favor of approval. From August 20, 2021, until on or about March 1, 2022, Plaintiff was paid $15.50 per hour. From March 1, 2022, until September 13, 2022, Plaintiff was paid $17.00 per hour. When Plaintiff was paid for overtime, his overtime rate was $23.25 and $25.50, respectively. Plaintiff was employed for just over a year, and his total compensation during his employment was $37,748.86. Of that amount, $4,861.15 was from overtime pay.

The prevailing wage rates in effect during Plaintiff's employment were approximately $32/hour for Rod People and approximately $43/hour for Instrument People.[1] So, if Plaintiff were paid at prevailing wage rates he would have earned approximately 100 – 150% more than he actually made.[2] Accordingly, Plaintiff's counsel has estimated that if Plaintiff were to successfully establish at trial that he was entitled to prevailing wages, then his maximum recovery based on his individual allegations of unpaid regular and overtime wages under the breach of contract and FLSA claims would be between $37,749 and $56,622 (depending on whether his job duties resulted in him being classified as an Instrument Person or a Rod Person). Based on the Settlement Agreement, Plaintiff's individual net recovery would be $11,636.09 (after attorney's fees and costs), which is 21 – 31% of his anticipated maximum recovery.

Based on the documents and information Plaintiff gathered and provided during discovery, it is very unlikely that Plaintiff would have been able to recover all of his alleged damages in full. Plaintiff's claims depend on the theory that Defendants were responsible for paying Plaintiff prevailing wages through its arrangements with the State and/or municipalities. A serious risk arose that the alleged contracts upon which Plaintiff's claims depend did not exist. Though Plaintiff may have been able to argue that prevailing wage laws still applied to Plaintiff's work through public leases and agreements, Plaintiff faces substantial risk that his claims would be dismissed and would be further difficult to prove on a class wide basis. Based on the foregoing information and serious litigation risks, the Court should find that the settlement sum the Parties have agreed upon is reasonable. *See* e.g., *Redwood v. Cassway Contracting Corp.*, No. 16-CV-3502, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (finding net settlement of 29.1% of FLSA plaintiffs' total alleged damages reasonable given the serious litigation risks involved).

---

[1] The Prevailing Wage Rates for both jobs changed by about $1 in July of 2022.
[2] This is a rough approximation, as Plaintiff has not engaged an expert to fully analyze Plaintiff's damages.

B. *The Settlement Agreement Enables the Parties to Avoid Anticipated Burdens and Expenses in Establishing Their Respective Claims and Defenses and There Are Serious Litigation Risks Faced by the Parties*

The second and third factors also weigh in favor of approval. A settlement avoids a trial on the merits that would have an uncertain potential outcome. *See Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). In reviewing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiffs against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

In light of these factors, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter, such as whether or not Defendants were required to pay Plaintiff prevailing wages. The Parties acknowledge the uncertainty surrounding further litigation of the issues in this action, and the settlement allows them to completely eliminate this risk to both Parties, particularly where a determination of Plaintiff's lack of entitlement to prevailing wages would potentially yield an all or nothing outcome. Moreover, the Parties are very much in the beginning phases of litigation and have yet to accrue substantial litigation costs, which they would certainly accrue if this case were to proceed to class action litigation, full discovery, depositions, motion practice, and a trial.

Plaintiff is willing to resolve his claims because he will receive immediate payment and relief, which for him outweighs the uncertainty of extended litigation, the significant risk of a determination that Plaintiff is not entitled to any relief under the alleged contracts, the FLSA or NYLL, and associated litigation costs including depositions, motion practice, and a potential trial for only the *possibility* of relief. *See Reyes v. Buddha-Bar NYC*, 08-CV-2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and discussing how "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").

C. *The Settlement Agreement is the Product of Arm's-length Bargaining between Experienced Counsel*

The Parties, through their respective counsel, have engaged in good faith, arm's-length negotiations. Plaintiff's counsel provided Defendants' counsel with a detailed breakdown of Plaintiff's anticipated damages for his wage and hour claims. Plaintiff is represented by The Law Office of Christopher Q. Davis, PLLC, a New York based law firm that almost exclusively practices plaintiff-side labor and employment law and specializes in wage and hour individual and class actions. Defendants are represented by Squire Patton Boggs, a law firm that regularly represents employers in labor and employment law matters, including wage and hour actions.

D. *No Possibility of Fraud or Collusion.*

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients throughout the negotiations on the benefits and risks of continued litigation. Moreover, because Plaintiff has not performed any services for

any Defendant since prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace. *See Cisneros v. Schnipper Rest. LLC*, 13 CV- 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion are "not as relevant when the plaintiffs no longer work for the defendant").

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### III. Plaintiff's Counsel is Entitled to a Reasonable Fee of $8,363.91

Under the proposed Settlement Agreement, Plaintiff's attorneys' fees and costs are $8,363.91. Plaintiff's counsel submits that the requested fees and costs are reasonable. A court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Pursuant to the written retainer agreement between The Law Office of Christopher Q. Davis, PLLC (the "Firm") and Plaintiff, Plaintiff agreed that the Firm would represent him on a contingency basis and that the Firm would retain 33.33% of any gross recovery, plus the costs and disbursements incurred by the Firm. Here, the Firm is requesting this Court award a total of $8,363.91 in attorneys' fees and costs and expenses to fully satisfy any claim that the Firm may have for attorneys' fees or costs associated with representation of the Plaintiff. This total amount includes costs ($1,697.24) and 33.33% of the gross recovery ($6,666.67). An itemized list of these costs are attached to this letter as **Exhibit 2**.

Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. *Santos v. EL Tepeyac Butcher Shop Inc.*, 15-CV-814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 13-CV-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sep. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); *Febus v. Guardian First Funding Grp.*, LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[A] fee that is one-third of the fund is typical" in FLSA cases"); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09-CV-486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) ("Courts in this District generally find 33% of the overall settlement, mirroring the one-third contingency fee arrangement to be reasonable."); *Kirby v. FIC Restaurants, Inc.*, No. 519CV1306FJSML, 2020 WL 5791582, at *4–5 (N.D.N.Y. Sept. 28, 2020).

The actual lodestar amount in this matter as of the date of this letter is calculated at $13,238.00. The time records containing the lodestar amount for this matter are attached hereto as **Exhibit 3**. The lodestar amount was calculated using an hourly rate of $450.00 for partner Christopher Q. Davis; an hourly rate of $250.00 for associate Nicholas Bittner; and an hourly rate

of $100.00 for the paralegal. These rates are comparable to what is typically awarded for attorneys, law clerks, and paralegals. In this Circuit, hourly rates of $300-$450 for partners, $200-$325 for senior associates, $100-200 for junior associates and $75-$100 for law clerks have been regularly awarded in employment cases. *See e.g. Toussie v. Allstate Insurance Company*, No. 15-CV-5235 (ARR), 2019 WL 2435852, at *26, (E.D.N.Y. Feb. 6, 2019) (approving an hourly rate of $450 per hour for a partner, $300 per hour for a senior associate, $200 per hour for a first year associate and $100 per hour for a paralegal); *Griffin v. Astro Moving & Storage Co. Inc.*, No. 11-CV-1844-(MKB), 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (noting reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates.") (internal quotation marks omitted); *Pall Corp. v. 3M Purification Inc.,* No. 97–CV–7599, 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (citation and internal quotation marks omitted) (collecting cases).

Plaintiff is represented by The Law Office of Christopher Q. Davis, PLLC, a firm that almost exclusively practices plaintiff-side labor and employment law. Mr. Davis has been practicing law for over 15 years with a primary focus on litigation of labor and employment law cases. Mr. Nicholas Bittner is an associate at The Law Office of Christopher Q. Davis, PLLC and prior to joining the firm he worked as a staff attorney for four years at Essex-Newark Legal Services representing tenants in Newark's Tenancy court.

## IV. Conclusion

For the reasons set forth above, the Parties respectfully request that the Court approve the Settlement Agreement. Plaintiff's counsel further requests that the Court approve the attorneys' fee award as fair and reasonable.

Should you have any questions, please do not hesitate to contact us. We thank the Court for its time and consideration.

Sincerely,

_____

Christopher Q. Davis
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004

cc: All counsel of record (via ECF)